# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 20, 2002 Session

## STATE OF TENNESSEE v. COLIN REED WELLS

**Appeal from the Criminal Court for Knox County**
**No. 70048A     Mary Beth Leibowitz, Judge**

---

**No. E2001-02612-CCA-R3-CD**
**December 6, 2002**

---

The defendant, Colin Reed Wells, was convicted by a Knox County Criminal Court jury of carjacking (Class B felony), robbery (Class C felony), aggravated assault (Class C felony), resisting arrest (Class B misdemeanor), violation of driver's license law (Class B misdemeanor), evading arrest (Class A misdemeanor), evading arrest (Class D felony), and assault (Class A misdemeanor). Following his convictions, the trial court merged some convictions and imposed an effective sentence of 32 years as a multiple offender in the Department of Correction. On appeal, he claims his carjacking conviction is infirm because the prosecution failed to disclose exculpatory evidence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Richard Clark and Russell Greene, Knoxville, Tennessee, for the Appellant, Colin Reed Wells.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Marsha Mitchell, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The defendant's convictions resulted from his actions on October 17, 1999. The state's evidence showed that the female victim of the carjacking and robbery was sitting in her automobile in the parking lot of a supermarket on Clinton Highway in Knoxville. She was waiting for her male companion who was shopping in the store, and she sat in the driver's seat and had her car engine idling. The defendant opened the passenger-side door, entered the vehicle, and ordered the victim to exit the car and to leave her purse on the seat. As she complied, she saw a female, who was the defendant's sister and co-defendant, standing beside the driver's door.

The defendant drove away in the victim's car, and at some point, police officers pursued the defendant. The assaultive and evading and resisting arrest offenses occurred during the chase and ultimate apprehension of the defendant. After the defendant was apprehended, the arresting officers handed over the defendant to Knoxville Police Officer J.D. Brown, who transported the defendant back to the supermarket for a show-up identification by the victim. Afterward, Officer Brown transported the defendant as well as the co-defendant to jail. During both trips when the defendant was confined in the rear compartment of Officer Brown's cruiser, the cruiser's video camera was operating and recording the defendant's conversation in which he asserted that he had been involved in a drug transaction with the victim and her boyfriend.

The prosecutor did not discover the existence of the videotape until a few days before trial. The defense reviewed the tape on Friday before the trial began on the following Wednesday. The defendant believed that the recorded conversation supported the defendant's claim at trial that, although he took the victim's car, he did not do so by carjacking.

The state moved the court to exclude the videotape from evidence. Initially, because the trial court determined that the content of the tape was hearsay and self-served the defendant, it sustained the motion to exclude the tape from evidence. However, during the defendant's case-in-chief, the trial judge relented and allowed the defendant and the co-defendant to introduce pertinent portions of the videotape. Thus, neither the exclusion nor the somewhat belated disclosure of the tape is an issue on appeal; rather, the defendant is aggrieved that the state obstructed him in his bid to locate and interview Officer Brown.

Prior to trial, the defendant had moved to discover any written or recorded statements of the defendant, "a list of the names and current addresses of all witnesses who the state intends to call to testify," statements of witnesses who are not to be called to testify, and any exculpatory evidence, including "the names and addresses of any witness whom the State believes would give testimony favorable to the defendant . . . regardless whether the State intends to call the witness."

After trial, the defendant's counsel asserted in an affidavit filed with the motion for new trial that during the trial, he asked the prosecutor where he could find Officer Brown, who as of the time of trial, was no longer employed in the police department. Counsel's affidavit further asserts that the prosecutor replied "that she did not know where [Brown] was, that she assumed he was still at the police department." The defendant also appended to his new trial motion the affidavits of Knox County Sheriff's Department officers who, during the defendant's trial, discussed Brown's whereabouts with the prosecutor. She told them that she had been unable to locate Brown. The defendant also presented the affidavit of Brown himself, who averred that on the eve of the defendant's trial, the prosecutor called him at the Jefferson City Walmart, where he was employed as an assistant manager. Brown further averred that he told the prosecutor that his entire encounter with the defendant on October 17, 1999 was recorded on the videotape and that "it had been some time since the events took place and that she should rely on the videotape." Brown averred that he had declined to answer the prosecutor's questions in the absence of an opportunity to review the tape.

In his motion for new trial, the defendant claimed that Brown would have corroborated the defendant's trial testimony that the defendant's possession of the victim's car was the result of a "drug deal gone bad" and not a carjacking. The trial court overruled the motion for new trial, finding that the state was not required to supply addresses of witnesses and that, in any event, former officer Brown said in his affidavit that he "told her to rely on the videotape." The trial court found that the "tape came [in] so I'm not sure there's been any major prejudice to [the defendant]." The trial judge commented, "I'm not sure that what we have here was exculpatory evidence, and even if it was, it came in anyway [through the videotape and through the defendant's testimony]." Furthermore, the trial court relied upon the defendant's failure to move for a continuance when counsel was unable to locate Officer Brown. The court correctly recalled that, after the defendant had reviewed the videotape and after the court's initial ruling on the state's motion *in limine*, the defendant announced that he was ready to proceed to trial.

On appeal, the defendant claims that the prosecutor violated her obligations set forth in *Brady v Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), by failing to disclose to the defense the address or whereabouts of J.D. Brown. The defendant argues in his brief that Brown could have corroborated that the defendant asserted facts during the defendant's conversation in Brown's police cruiser that would have contradicted the theory of carjacking. The defendant also claims that Brown could have affirmed that the defendant was the only one who would have known "certain facts" and that "[t]here was not enough time for the Defendant to fabricate and/or know certain facts had they not occurred as defense counsel's theory supposed."

In *Brady*, the United States Supreme Court held that the prosecution has the duty to furnish exculpatory evidence to the accused upon request. "Any suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S. Ct. at 1196-97. The duty to disclose extends to all "favorable information" regardless whether the evidence is admissible at trial. *State v. Marshall*, 845 S.W.2d 228, 232-33 (Tenn. Crim. App. 1992). Both exculpatory and impeachment evidence fall under the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985).

Before an accused is entitled to relief via *Brady*, he must establish several prerequisites: (a) the prosecution must have suppressed the evidence; (b) the evidence suppressed must have been favorable to the accused; and (c) the evidence must have been material. *See id.* at 674-75, 105 S. Ct. at 3379-80; *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-97; *Marshall*, 845 S.W.2d at 232. Evidence is material under the *Brady* rule only if there is a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S. Ct. 1555, 1556 (1995). In *State v. Spurlock*, 874 S.W.2d 602 (Tenn. Crim. App. 1993), this court recognized a fourth prerequisite to relief, that "the accused must make a proper request for the production of the evidence, unless the evidence, when viewed by the prosecution, is obviously exculpatory in nature and will be helpful to the accused." *Id.* at 609. The defendant bears the burden of proving a *Brady* violation by a preponderance of the evidence.

-3-

*Id.* at 610; *State v. Joan Elizabeth Hall*, No. 01C01-9710-CC-00503, slip op. at 19 (Tenn. Crim. App., Nashville, Jan. 28, 1999).

Applying these principles, we hold that, although the defendant requested J.D.Brown's address or whereabouts, the defendant has failed to establish by a preponderance of the evidence that due process principles, via *Brady*, compelled disclosure of Brown's address or whereabouts. The trial judge did not believe that the prosecutor suppressed this information, but even if she had determined that the state suppressed the information, the record is devoid of any showing that the information was material. Indeed, Mr. Brown's affidavit, advanced by the defendant, reveals that the affiant recalled nothing about the October 17, 1999 encounter with the defendant other than what was revealed on the videotape. Although the tape contains self-serving statements of the defendant, there has been no showing that Mr. Brown could have imparted additional information that would have been favorable to the defendant or that probably could have produced a different result. Thus, the trial court did not err in overruling the *Brady* claim presented in the defendant's motion for new trial.

Having addressed the issue raised on appeal, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE